No. 41,287

In the Matter of the Adoption of ROBERT ERNEST EDWARD THORN-TON, a Minor Child. (VELMA I. THORNTON, *Appellant*, v. EDNA THORNTON, now EDNA HONSINGER, *Appellee*.)

(337 P. 2d 1027)

Opinion filed April 11, 1959.

*Samuel C. Jackson* and *Elisha Scott*, both of Topeka, argued the cause, and *John J. Scott* and *Charles S. Scott*, both of Topeka, were with them on the briefs for the appellant.

*Hal C. Davis*, of Topeka, argued the cause, filed a counter abstract but filed no brief for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This appeal, here on an order overruling a demurrer to evidence in the district court, stems from an adoption proceeding.

At the outset it should be stated that after a careful examination of the record we have concluded that a historical review of all facts, events and proceedings bearing on the case is required in order to give readers of this opinion a proper understanding of the appellate issue involved.

On November 18, 1955, Velma I. Thornton, a paternal aunt, filed a petition in the probate court of Shawnee County for the adoption of Robert Ernest Edward Thornton, a minor child, born on August 13, 1952, wherein, after stating her qualifications and asserting such child was then in her custody, she alleged:

". . .; that Robert E. Thornton, the father, is a resident of Boise, Idaho; *that Edna Thornton is the mother and her residence and address is unknown; that by virtue of a divorce decree granting unto the father of said child a divorce in January,* 1955, *he was also awarded the legal custody of said child, and still does have the legal custody* of the said minor child; that the father has given his consent to the adoption of said child; *that the consent of said mother is impossible for the reason that she has been unheard of for a long period of time and the mother failed to assume duties of a parent 2 consecutive years;* that the consent of the father is in writing, duly acknowledged to have been freely and voluntarily made, and duly witnessed." (Emphasis supplied.)

On January 23, 1956, in the absence of Edna Thornton Honsinger, who had not been served with notice of the hearing, and based solely on evidence adduced by the petitioner, the probate court entered a decree, adopting such child as the child of petitioner, predicated on findings which, so far as here important, read:

". . . that due and proper notice of the time and place of the hearing of the petition has been given to the natural father and The State Department of Social Welfare; that the order of the court requiring notice to be given has been fully complied with, and that proof of the said notice and the service thereof has been duly made and filed in said Court; *that the father of said child has exclusive custody and control of said child as the result of a decree of divorce granted him in January,* 1955, and he has duly executed his consent to the adoption of said child by the petitioner, . . . *The whereabouts of the mother is unknown rendering it impossible for petitioner to obtain her consent, or to serve notice upon her.*

"The Court further finds that the Department of Social Welfare has made an investigation of the advisability of the proposed adoption and has reported its findings and recommendations to the Court and filed the same therein as provided by law.

". . .; that the best interests of said child will be promoted by said adoption, . . . and all of the provisions of law relative to adoption have been complied with . . ." (Emphasis supplied.)

Several months later, and on December 27, 1956, Edna Honsinger appeared in probate court and filed her petition to set aside and vacate the decree of adoption on divers alleged grounds of fraud. The essential charges set forth in this pleading were subsequently passed upon by the probate court and are reflected by a journal entry to which we shall presently refer, hence they need not be detailed.

January 9, 1957, after a full and complete hearing on the foregoing petition, at which all parties were present, represented by counsel and adduced evidence, the probate court vacated and set aside the adoption decree of January 23, 1956. Its reasons for that action were set forth at length in its journal entry of judgment which, so far as here pertinent, reads:

"Now on this 9th day of January, 1957, the above matter comes regularly on for hearing, respondent finished the introduction of her evidence and rested, and after arguments of counsel, and the Court being fully advised in the premises, *finds that by the Decree of Divorce entered by the Superior Court in the State of Washington in and for Yakima County on September 27, 1954, wherein Edna Thornton was plaintiff and Robert Thornton was defendant, the Court granted sole care and custody of the minor child, being Robert Ernest Thornton, to plaintiff Edna Thornton, now Edna Honsinger, petitioner herein, and that Robert Thornton entered his appearance in said case and was bound by the order of said Court. The Court further finds that said minor child was taken by Robert Thornton, the father, from the State of Washington contrary to the orders of the Superior Court in the State of Washington in May of 1954, that said father, Robert Thornton, failed to return said minor child in compliance with the orders of said Superior Court;* that the adoption petition filed by respondent in this Court on November 18, 1955, alleged that the residence of Edna Honsinger, petitioner herein, was unknown, that consent of petitioner was impossible to be had for the reason that she had been unheard of for a long period of time, *and further alleged that the mother failed to assume the duties of a parent for two consecutive years; this Court finds that said statements were not true, that the evidence did not establish that the petitioner had abandoned said child* or that her address was unknown *or that she had failed to assume the duties of a parent for two consecutive years.*

"The Court further finds that in the adoption case filed in this Court by respondent, Velma Thornton, *that petitioner, Edna Honsinger, the mother of said child received no notice of said adoption proceedings and therefore was unable to appear and contest the question as to whether she failed to assume the duties of a parent for more than two consecutive years last past, and further finds that Edna Honsinger had not abandoned said child, but on the contrary was entitled to the legal custody thereof and that two consecutive years had not elapsed since the mother had said child, that she*

*did not file her written consent to said adoption, and the Court further finds that at the time of the filing of said adoption petition neither the father, Robert Thornton, nor Velma I. Thornton, the aunt of said child, had any legal right or custody to said minor child.* The Court further finds that for the above reasons as shown by the evidence that the Decree of Adoption entered by this Court on January 23, 1956, should be set aside. (Emphasis supplied.)

Velma Thornton promptly perfected an appeal from the foregoing decision to the district court, as authorized by statute (G. S. 1949, 59-2401). Thereafter such appeal came on for hearing before that tribunal, all parties being present in person and by counsel. Edna Honsinger then proceeded to adduce her evidence, which from the record presented appears to have been practically the same as that offered by her at the hearing in probate court, and rested her cause. Thereupon Velma Thornton demurred to such evidence. When her demurrer was overruled she offered no evidence, rested her case upon the propriety of such ruling, and perfected the instant appeal.

At the outset it may be stated we are not inclined to burden our reports with an extended recital of the evidence adduced by appellee in support of her petition to vacate the adoption decree. It suffices to say that after reviewing all the evidence in the light of the established rule (See West's Kansas Digest, Trial, § 156 [2] [3]; Hatcher's Kansas Digest [Rev. Ed.], Trial, §§ 149, 150, 151), it must be accepted as true and given the benefit of all reasonable inferences, we are convinced, and hence required to hold, that such evidence is sufficient to establish each and every factual finding made by the probate court in its heretofore quoted journal entry of judgment. Therfore we proceed on that premise.

Under a general specification of error that the trial court erred in overruling her demurrer to the evidence the first contention advanced by appellant (*Gillen v. Stangle,* 175 Kan. 364, 264 P. 2d 1079) is that a judgment is presumed to be valid and will not be set aside in the absence of clear and convincing evidence. We have no quarrel with the general rule on which appellant bases this claim. In fact many of our decisions hold a presumption of validity attaches to the judgment of a district court until the contrary is shown, and that before this court will set aside a judgment the appellant must affirmatively make it appear that the judgment is erroneous. See, e. g., *Quivira, Inc. v. Quivira Co., Inc.,* 173 Kan. 339, 245 P. 2d 972; *Gillen v. Stangle,* supra; *Smith v. DeHay,* 176 Kan. 422, 271 P. 2d 251; *State, ex rel. v. Henderson,* 179 Kan. 142,

292 P. 2d 718; *Vaughn v. Taylor,* 180 Kan. 190, 302 P. 2d 1004; *B & S Enterprises v. Rudd,* 182 Kan. 710, 717, 324 P. 2d 515. The trouble from appellant's standpoint is that we fail to see where this rule has any application under the existing facts and circumstances. Indeed the contrary appears. Here the judgment appealed from is an order overruling appellant's demurrer to the evidence and all this court is concerned with is the propriety of that ruling. In that situation application of the rule on which she relies simply means that the district court's judgment, from which she appeals, carries with it a presumption of validity and the burden is on her to make it affirmatively appear such judgment is erroneous.

Next directing our attention to G. S. 1949, 60-3007, here applicable by reason of G. S. 1949, 59-2213, providing that the district court shall have power to vacate or modify its own judgments or orders at or after a term at which such judgment or order was made for fraud practiced by the successful party in obtaining a judgment or order, the appellant points out the fraud relied on for such relief must be perpetrated by the successful party. Quite true. However it does not follow, as she insists, the record fails to disclose she participated in the perpetration of any fraud.

Appellant filed a petition in probate court for adoption of a minor child wherein she alleged consent of its mother (the appellee) was impossible for the reason such mother had been unheard of for a long period of time and had failed to assume the duties of a parent for two consecutive years. At that time she knew or was bound to know that under the existing law of this state (G. S. 1953 Supp., 59-2102, now G. S. 1957 Supp., 59-2102), unless the mother had failed or refused to assume the duties of a parent for two consecutive years, the probate court had no legal authority to grant her petition for the adoption of such child without the mother's consent.

The record makes it appear, that in reliance on the foregoing allegations of such pleading, the probate court, without notice to the mother, held a hearing on such petition and then, based on appellant's evidence supporting such allegations, entered the involved decree of adoption without any notice whatsoever to the mother of the hearing and without her written consent to the adoption.

It further appears from the record that, as authorized by G. S. 1949, 59-2213, 60-3016 and 60-3007, *Fourth,* and within the time prescribed by 60-3008, appellee filed her motion in probate court to vacate and set aside the adoption decree which, after a hearing,

was granted by that tribunal for the reasons set forth in the journal entry of judgment from which we have last quoted, all of which, as we have previously indicated, were sustained by evidence. In addition, it may be stated, this action was based on evidence establishing beyond doubt that the allegations of appellant's petition, as well as the evidence adduced by her in support thereof, to the effect appellee had failed to assume the duties of a parent for two consecutive years, were wholly false.

From what has been heretofore related we think it becomes obvious that action on the part of appellant, as herein outlined, resulted in fraud on both appellee and the court in that by the misrepresentations, to which we have heretofore referred, appellant caused the court (1) to take jurisdiction in a proceeding over which, in the absence of such misrepresentations, it would have had no jurisdiction; (2) to determine such proceeding without giving the appellee notice thereof and the opportunity to defeat such proceeding by appearing at the trial and exposing the falsity of some, if not all, of the material allegations of the petition; (3) to render an erroneous judgment, based upon the assumed but nevertheless false premise that appellee's written consent to the adoption was neither necessary nor required to the rendition of a valid decree because she had failed to assume the duties of a parent for two consecutive years prior to the filing of the adoption proceedings; and deprived the appellee (1) of the right to have notice of the hearing on the petition for adoption, (2) the right to have an opportunity to appear at such hearing and litigate the claim she had abandoned her child for a period of two years, and (3) of the right and opportunity of a fair trial on all issues involved in the adoption proceeding.

Having determined that fraud inhered in the adoption judgment we can now turn to the third and the final contention advanced by appellant in connection with its general specification of error the trial court erred in overruling her demurrer to the evidence.

In connection with this subject it may be said without fear of contradiction that, citing *Mathey v. Mathey*, 179 Kan. 284, 294 P. 2d 202; *Lowry v. Lowry*, 174 Kan. 526, 256 P. 2d 869; *Stafford v. Stafford*, 163 Kan. 162, 181 P. 2d 491; *Bitsko v. Bitsko*, 155 Kan. 80, 122 P. 2d 753; *Plaster Co. v. Blue Rapids Township*, 81 Kan. 730, 106 Pac. 1079, the appellant insists the rule of this jurisdiction is that in order to vacate or modify a judgment on grounds of fraud, the fraud relied on must be extrinsic fraud as distinguished from intrinsic fraud. We agree that is the rule announced in the above

decisions. We also agree they hold that evidence of intrinsic fraud affords no grounds for vacating a judgment; and that perjury, standing alone, ordinarily affords no ground for vacating a judgment. Even so it does not follow, as appellant contends, they warrant or compel a conclusion all evidence of fraud presented by appellee to the district court was intrinsic in character and for that reason required the sustaining of her demurrer. Indeed, when carefully analyzed and based on what has been heretofore stated and held with respect to the fraud established by the evidence and the results flowing therefrom, we are convinced such decisions not only support but uphold the ruling on the demurrer.

In *Plaster Co. v. Blue Rapids Township*, supra, we held:

"The fraud which will authorize a court to vacate a judgment in an action brought for that purpose under section 570 of the code of civil procedure must be extrinsic or collateral to the matter involved in the former action, and sufficient to justify the conclusion that but for such fraud the result would have been different." (Syl. ¶ 2.)

And in the opinion said:

". . . *By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy.* . . . Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, *unless there be a showing that the jurisdiction of the court has been imposed upon or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial.*" (p. 785.) (Emphasis supplied.)

*Bitsko v. Bitsko*, Syl. ¶ 1, supra, follows the same rule announced in Syl. ¶ 2 of the Plaster case.

In *Lowry v. Lowry*, Syl. ¶ 1, supra, we followed the rule announced in Syl. ¶ 2 of the Plaster case, and in the opinion, quoting from *Putnam v. Putnam*, 126 Kan. 479, 268 Pac. 797, it is said:

" 'By extrinsic fraud is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy.' " (p. 528.)

In *Stafford v. Stafford*, supra, a proceeding filed pursuant to the provisions of G. S. 1935, 60-3007, *Fourth, et seq.,* now G. S. 1949, 60-3007, *Fourth,* a divorce decree was set aside on the ground of fraud and, in rejecting one of the defendant's claims of error to the effect the district court erred in overruling his demurrer to the evidence at the close of plaintiff's testimony, it is said that in considering the propriety of that ruling this court could not weigh the plaintiff's evidence but must take her testimony as true and draw

all reasonable inference from it tending to support the judgment.

*Mathey v. Mathey,* supra, fully discusses the distinction between intrinsic and extrinsic fraud and there is no occasion to repeat what is there said on that subject. However, it is to be noted it cites the Plaster case as an authority and approves the rules therein announced. Moreover, at page 290 of the opinion it states:

"Despite the difficulty often encountered in making a practical application of the distinction between the two types of fraud, it is clear from the foregoing authorities that, generally speaking, *'extrinsic fraud'* relates to acts which *prevent a fair presentation of a controversy,* and that *'intrinsic fraud'* relates to acts which prevent a fair determination of the issues once a court has a controversy before it." (Emphasis supplied.)

Having previously indicated that the evidence of fraud, herein complained of, compels a conclusion that the jurisdiction of the probate court was imposed upon and that the appellee was deprived of her right to a fair trial on the issues involved in the adoption proceeding, we have little difficulty in concluding that such evidence was sufficient to establish extrinsic fraud under the decisions to which we have heretofore referred. It follows the district court's action in overruling appellant's demurrer to the appellee's evidence was proper and must be upheld.

For another decision supporting the foregoing view see *Blair v. Blair,* 96 Kan. 757, 759, 760, 153 Pac. 544.

In conclusion it should perhaps be stated that in their very nature adoption proceedings present situations where misrepresentations of the character here involved, resulting in imposition on the power and authority of a court to adopt a child and depriving the rights of parents to a fair trial on all issues involved in the adoption proceedings, should be held to constitute extrinsic fraud. Such proceedings are in a class by themselves. They affect the interests of the public as well as the parties. They involve the welfare of the child and on many occasions are concluded without his consent. Certainly, in any adoption proceeding, under circumstances such as are involved in the case at bar, the ends of justice require that, when challenged pursuant to the provisions of G. S. 1949, 60-3007, *Fourth,* and within the time prescribed by G. S. 1949, 60-3008, an adoption decree be vacated and set aside so that there may be a re-examination of all issues involved and the rights of all interested parties fully and completely protected. This conclusion, it may be added, enunciates no new or startling legal theory. Our own extended search of the authorities, since counsel for appellee did not see fit to favor us, or protect the judgment obtained by him in the

court below with a written brief, discloses one case which, from the standpoint of facts, circumstances and procedure involved, is, for all practical purposes, identical with our own. It is *Bell v. Krauss*, 169 Cal. 387, 146 Pac. 874, which holds:

"Where a father is deprived of the custody and control of his minor child without knowledge of any preceeding in that behalf and without a hearing, he is entitled to be relieved from the judgment or order taken against him because of surprise and through his excusable neglect. Where a parent makes a *prima facie* showing that proceedings were so taken against his will and without the notice to which, under the law, he was entitled, the court should set aside the award of custody and give the parent a hearing and an opportunity to oppose the efforts of other people to deprive him of his child." (Syl. 4.)

A final claim of error requires attention. Pointing out that the only issue presented by the appellee's petition to vacate the judgment of adoption, was whether fraud was practiced by the appellant in her petition or in the testimony before the probate court at the time of the hearing on the adoption, appellant contends the district court erred in admitting evidence of misconduct, some of which smacked of fraud, on the part of appellant subsequent to those dates. We are not disposed to prolong this opinion by laboring arguments advanced on this point. Assuming, without deciding, there was error in the admission of such testimony appellant fails to make it affirmatively appear that error prejudicially affected her substantial rights. Actually, the cold hard facts are, the evidence relating to extrinsic fraud in procuring the probate court's decree was sufficient to warrant the trial court's action in overruling appellant's demurrer to appellee's evidence. Therefore under statutory mandate (G. S. 1949, 60-760 and 60-3317) error, if any, in admission of the testimony of which appellant complains must be and it is disregarded.

The order and judgment of the district court overruling the demurrer to the evidence is affirmed.

It is so ordered.